JS-6

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

LORI SILEVEN,

    Plaintiff,

v.

MANHEIM REMARKETING, INC., a California Corporation;
COX AUTOMOTIVE, INC., a Georgia Corporation;
HEIDI YUNGBLOOD, an individual; and
DOES 1 through 30, inclusive,

    Defendants.

Case No. 5:21-cv-02035-JWH-KKx

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [ECF NO. 13]**

Before the Court is the motion of Plaintiff Lori Sileven to remand this case to the Riverside County Superior Court.[1] The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[2] the Court orders that the Motion is **GRANTED**, as set forth herein.

## I.  BACKGROUND

This lawsuit arises out of Sileven's employment with Defendant Cox Automotive Corporate Services, LLC ("CACS").[3] The Court recites the following facts as alleged in the Complaint without any judgment to their veracity:

Beginning in April 2017, Sileven began working for Defendants Manheim Remarketing, Inc. ("Manheim") and Cox Automotive, Inc. ("Cox Automotive") as a part-time lot driver.[4] By May 31, 2019, Sileven became a permanent employee.[5] Around that time, Sileven began suffering from occasional accidents where she would soil herself on her way to work.[6] Several

---

[1]  Pl.'s Mot. to Remand ("Motion") [ECF No. 13].

[2]  The Court considered the following papers: (1) Compl. (the "Complaint") [ECF No. 1-3]; (2) Defs.' Notice of Removal of Civil Action to Federal Ct. (the "Removal Notice") [ECF No. 1]); (3) the Motion (including its attachments); (4) Defs.' Opp'n to the Motion and for Award of Att'y Fees and Costs (the "Opposition") [ECF No. 15]; and (5) Pl.'s Reply on Mot. to Remand (the "Reply") [ECF No. 17]. Notwithstanding the caption of the Opposition, neither party explicitly requests an award of attorneys' fees or costs, so the Court does not consider the issue. *See generally* Motion; Opposition; Reply.

[3]  In the Removal Notice, CACS asserts that it employed Sileven and that "Defendants Manheim Remarketing, Inc. and Cox Automotive, Inc. have been improperly named as defendants in this case." Removal Notice 2 n.1.

[4]  Complaint ¶ 10. The Court observes a factual discrepancy here. CACS asserts that Sileven began work for CACS on May 31, 2019. *Compare id.* at ¶ 12 *with* Joint Rule 26(f) Report [ECF No. 14] 1:23-24. CACS also claims that Manheim and Cox Automotive are erroneously sued because CACS was Sileven's employer, not Manheim or Cox Automotive. *See* Removal Notice ¶ 3 n.1.

[5]  Complaint ¶ 12.

[6]  *Id.* at ¶ 14.

times, the situation was so dire that she had to return home before she arrived.[7] When Sileven suffered such an accident, she would call in to work or leave a voicemail, explaining what had happened.[8]

      In October of that year, two non-party individuals from her employer told Sileven that she could take a medical leave of absence due to these repeated accidents.[9] That same month, during a meeting, her employer's regional vice president announced a new policy that limited employees' use of the restroom to only during breaks and lunch.[10]

      On October 23, while on the job, Sileven began to experience another accident.[11] Because she believed that she would be disciplined if she violated the policy prohibiting employees' use of the restroom outside of lunch or break times, she did her best to refrain from using the restroom until the next available break.[12] When that time came, Sileven headed directly to the restroom, but she did not make it there fast enough.[13] After soiling herself, she retrieved a change of clothes, but she was unable to reach her car to store the soiled clothes before her break was over.[14] She therefore decided to double-bag the soiled clothes and store them on a company van.[15]

      Regrettably, Sileven forgot about the bag containing the soiled clothes. On October 29, Sileven's supervisor, Defendant Heidy Youngblood, spoke to Sileven and her coworkers about the bag, described its contents, and demanded

---

[7] *Id.*
[8] *Id.*
[9] *Id.* at ¶ 15.
[10] *Id.* at ¶ 16.
[11] *Id.* at ¶ 17.
[12] *Id.* at ¶¶ 16 & 17.
[13] *Id.* at ¶ 17.
[14] *Id.*
[15] *Id.*

-3-

to know who left the bag in the company van—all the while staring directly at Sileven.[16] Sileven believed that Youngblood knew that Sileven left the bag in the van, since others members of her employer knew of her condition.[17] Therefore, Sileven concluded that she had no choice but to confess that she had soiled herself and had left the clothes in the van.[18] Youngblood embarrassed and belittled Sileven by yelling at her and publicly humiliating her.[19]

Over the coming months, Sileven took time off from work for medical appointments, during which she was formally diagnosed with fibromyalgia.[20] Although Sileven believed that she was using her sick time to cover those visits, Sileven eventually came to believe that she had been terminated.[21] Sileven later discovered in February 2020 that she had actually been placed on an involuntary administrative leave of absence.[22] Throughout March and April, Sileven struggled to be reinstated at her job, but she could not manage to navigate the administrative challenges.[23] On May 7, Sileven was terminated for job abandonment.[24]

Sileven filed this lawsuit on November 2 in the Riverside County Superior Court, asserting ten causes of action.[25] Of those, only her second cause of

---

[16] *Id.* at ¶¶ 18 & 19. Youngblood was erroneously sued as "Heidi Yungblood" instead of Heidy Youngblood. *See* Removal Notice ¶ 3.
[17] Complaint ¶ 20.
[18] *Id.* at ¶ 19.
[19] *Id.* at ¶¶ 19 & 60.
[20] *Id.* at ¶¶ 21-23. While Sileven does not explain how that diagnosis is linked to her repeated accidents, CACS neither disputes the connection nor disputes that her condition qualifies as a physical disability under § 12926(m) of the FEHA (defining physical disability). *See generally* Opposition.
[21] Complaint ¶ 24.
[22] *Id.* at ¶ 25.
[23] *Id.* at ¶¶ 26-30.
[24] *Id.* at ¶ 31.
[25] *See generally id.*

action—harassment under § 12940(j)(1) of California's Fair Employment and Housing Act ("FEHA")—was leveled at all Defendants, including Youngblood. CACS removed the action to this Court on December 3.[26] Sileven moved to remand on December 28,[27] and the matter is fully briefed.[28]

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. Accordingly, "[t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (internal quotation marks omitted).

To remove an action to federal court under 28 U.S.C. § 1441, the removing defendant "must demonstrate that original subject-matter jurisdiction lies in the federal courts." *Syngenta*, 537 U.S. at 33. As such, a defendant may remove civil actions where complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff." *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1234 (9th Cir. 2008).

The right to remove is not absolute, even where original jurisdiction exists. In other words, the removing defendant bears the burden of establishing that removal is proper. *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant"); *Gaus v. Miles, Inc.*, 980

---

[26] *See generally* Removal Notice.
[27] *See generally* Motion.
[28] *See generally* Opposition; Reply.

F.2d 564, 566 (9th Cir. 1992) ("The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." (quotation marks omitted)). Any doubts regarding the existence of subject matter jurisdiction must be resolved in favor of remand. *See id.* ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

In particular, a defendant asserting fraudulent joinder "carries the heavy burden of establishing the absence of any possibility of recovery." *Lighting Sci. Grp. Corp. v. Koninklijke Philips Elecs. N.V.*, 624 F. Supp. 2d 1174, 1179 (E.D. Cal. 2008) (citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)). "Remand must be granted unless the defendant establishes that there is **no possibility** that the plaintiff could prevail on any cause of action it asserted against the non-diverse defendant." *Gonzalez v. J.S. Paluch Co.*, 2013 WL 100210, at *4 (C.D. Cal. Jan. 7, 2013) (emphasis added). "Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the "wholly insubstantial and frivolous" standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 549 (9th Cir. 2018) (quoting *Bell v. Hood*, 327 U.S. 678, 682–83, (1946)).

### III.  DISCUSSION

Sileven is a citizen of California. In her Motion, Sileven does not contest that the citizenship of CACS, its members, Cox Automotive, or Manheim are completely diverse; *i.e.*, that none of them is a citizen of California. Nor does Sileven dispute that the amount in controversy exceeds the statutory threshold of $75,000.[29] Rather, Sileven contends that she can state a claim against, and

---

[29] *See generally* Motion; *see also* Opposition 2:28.

may recover from, Youngblood.[30]  Because Youngblood is domiciled in California,[31] her joinder would destroy diversity and necessarily divest this Court of subject matter jurisdiction.  Therefore, Sileven would need only one viable claim for relief against Youngblood.  As such, the Court's inquiry begins and ends with Sileven's second cause of action regarding harassment under the FEHA.

   The FEHA makes it illegal "[f]or an employer . . . or any other person" to harass an employee "because of . . . physical disability." Cal. Gov't Code § 12940(j)(1).  A disability harassment claim under the FEHA requires showing "that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their [disability]." *Cornell v. Berkeley Tennis Club,* 18 Cal. App. 5th 908, 927 (2017) (internal quotations omitted).

   CACS makes several arguments why Sileven cannot recover on her harassment claim against Youngblood.  First, CACS maintains that Sileven was not diagnosed with fibromyalgia until sometime after the van incident, so Youngblood could not have known of Sileven's purported disability.[32]  However, the "FEHA protects individuals not only from discrimination based on an existing physical disability, but also from discrimination based on a potential disability or the employer's perception that the individual has an existing or potential disability." *Soria v. Univision Radio Los Angeles, Inc.*, 5 Cal. App. 5th 570, 584 (2016).

---

[30] Motion 11:17-24.

[31] *See* Complaint ¶ 4.  CACS does not dispute that Youngblood resides in California.  *See* Removal Notice ¶¶ 33-40.

[32] Opposition 6:18-21.

Furthermore, the Complaint suggests that CACS had notice, since Sileven alleges that she informed her employer numerous times about her condition and even spoke with some of its representatives immediately prior to the van incident.[33]  Those allegations distinguish this case from *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237 (2008), *as modified on denial of reh'g* (Aug. 28, 2008), the only authority that CACS cites in support of its argument here.[34]  *See id.* at 1249 (affirming summary judgment where plaintiff failed to provide sufficient evidence to give defendant employer notice that he was disabled).

CACS insists that it is a "logical leap" to conclude that Sileven revealed her disability by "simply admitting to soiling the bag."[35]  While that may be true, such a deficiency could easily be cured with additional facts or revised allegations.[36]  *See Wilson-Condon v. Allstate Indem. Co.*, 2011 WL 3439272, at *2 (C.D. Cal. Aug. 4, 2011) (noting that a case must be remanded "unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure the purported deficiency").  Inarticulate pleading is not a reason to foreclose Sileven's claim for relief against Youngblood—at least, not at this stage of the litigation.  *Cf. Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 286 (2009) (noting that issues like hostile work environment are ones "not determinable on paper").

Second, CACS argues that Youngblood could not have harassed Sileven based upon her purported disability because there are no allegations that Youngblood referenced the disability during the incident.[37]  The Court does not

---

[33]  Complaint ¶¶ 14 & 15.
[34]  Opposition 6:9-16.
[35]  *Id.* at 7:8-11.
[36]  *See* Reply 1:11-23.
[37]  Opposition 6:21-26.

-8-

find this argument persuasive. Even though the Complaint does not specify what precisely Youngblood said, Sileven's allegations are clear that Youngblood's public inquisition pertained to the bag of soiled clothing.[38] Moreover, Sileven alleges on information and belief that Youngblood was aware of her condition.[39] Thus, Sileven's claim is not precluded on that basis.

        Third, CACS contends that the alleged harassment was neither severe nor pervasive enough to constitute a hostile workplace environment.[40] However, California's legislature recently amended § 12923 of the Government Code to provide that "a single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment." *See* Cal. Gov't Code § 12923(b). Frequency is not necessarily, therefore, a dispositive issue.

        CACS attempts to brush this legislative reality aside, asserting that "the complete lack of factual details in Plaintiff's Complaint does not allow for the single instance described in the Complaint to give rise to a claim under this standard."[41] The Court disagrees. While the Complaint may not qualify as an illustration of model pleading, it provides enough details to suggest that the single incident with Youngblood was unmistakably humiliating. Even if the Court believed that the public humiliation that Sileven endured was insufficiently extreme or severe to be actionable, such a determination would require making a judgment call—one where reasonable people could disagree. In view of that possibility, it is too early to say that Sileven could not possibly

---

[38] Complaint ¶¶ 17-20.
[39] *Id.* at ¶ 20; *see also* Reply 6:4-20.
[40] Opposition 7:20-9:7.
[41] *Id.* at 9:3-7.

recover on her harassment claim.[42] *See Gonzalez*, 2013 WL 100210, at *4. Thus, the Court concludes that Youngblood is not fraudulently joined, rendering this Court devoid of subject matter jurisdiction. *See* 28 U.S.C. § 1332(a).

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. The Motion is **GRANTED**.
2. This action is **REMANDED** to the Riverside County Superior Court.

**IT IS SO ORDERED.**

Dated: March 14, 2022

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[42] Reply 5:3-13.